Good morning. May it please the Court, I'd like to try to do three things. Can I identify your name for the record? Conrad Madsen for Mr. Atkin, Your Honor. Thank you. Thank you. Thank you. I'd like to try to do three things this morning. I'd like to first talk about the question, what it is and what it isn't, that needs to be resolved here today. Second, I'd like to provide, address the question and argue that the answer to the correct question is yes, and then provide some policy reasons in support of that answer. Okay. So except can be a powerful word. E-X-C-E-P-T can be a powerful word. It's the reason we're here today. Except as in except for claims, causes of action, or liabilities arising from the gross negligence, willful misconduct, fraud, or breach of the fiduciary duty of loyalty of any exculpated party, in each case subject to the determination of such by a final order of a court of competent jurisdiction. So those 45 words are at the heart of this appeal. And they are part of the plan injunction. They are the exception to the plan injunction. Now, were those words written into the injunction? Yes, Your Honor. It's in the excerpt of the record at 386. And because a competent counsel could make a good-faith argument that those words apply to the allegations of perjury, wire, and tax fraud against Mr. Myers and his advisor, the district court erred as a matter of law and therefore necessarily abused its discretion when it imposed sanctions, and therefore we ask the court to reverse and vacate the two sanctions orders at issue here. Now, in nearing the question for review, the question to resolve today is not whether this counsel, namely Mr. Atkin, made a good-faith argument or whether he even made a persuasive argument. It's not a personalized or subjective test. It's an objective test. In the district court, Judge Windmill wrote the question is whether the filing is unreasonable when viewed from the perspective of a competent attorney admitted to practice before the district court. He noted that it is an objective test, but he only provided part of the rule from Zaldivar. The district court left out the good-faith argument part, whether competent counsel could make a good-faith argument. And because it applied the wrong legal standard, it necessarily abused its discretion in imposing sanctions here. Second, it's not whether the complaint was ultimately dismissed as it was in Zaldivar. It was dismissed here. But that has no bearing on the objective test. As this Court wrote in Zaldivar, in addressing this question, we do not examine the complaint in the same manner as a court considering a Rule 12b-6 motion. Under the appropriate legal standard, we are concerned only with whether the complaint asserts a good-faith argument, even if that legal argument may ultimately fail. It's not whether there was a basis for a motion to dismiss. We're not here appealing a motion to dismiss. We're here appealing two motions for sanctions. It is not whether the complaint failed to state a claim under RICO. Although the other side's briefing tries mightily to bootstrap their motion to dismiss arguments here, they want the Court to know that Mr. Atkin was wrong. He was very wrong. But the district court expressly found that Mr. Atkin had carefully researched the Barton Doctrine and concluded that he could properly plead a Section 959A exception. So there was a reasonable inquiry here. But then it added he was wrong. That's in excerpts of record at 20. But it's not whether Mr. Atkin was wrong on the issue. We don't sanction every attorney who has a case dismissed or loses a motion or has a request for reconsideration that's denied. The narrow question for review here is whether a competent counsel could make a good-faith argument that the planned injunction exception apply to the allegations of willful misconduct and fraud. Again, because competent counsel could make such an argument, the district court erred as a matter of law, necessarily abused its discretion, so the sanctions order should be reversed and vacated. Now, how do we know that a competent counsel could make such an argument? We cited an Eighth Circuit opinion. Judge Millett, I'm happy you're here. Alexander v. Hedback, 718 Fed Third at 767. The plaintiff in that case contended that the Bankruptcy Reform Act of 1978 abrogated the Barton rule, and thus the rule should not prevent him from suing the trustees in Federal court. Now, the district court in that case disagreed and dismissed the plaintiff's complaint, but it did not sanction the attorney who filed the complaint. Now, Zaldivar is our case. I think in Cooter v. Gell, or excuse me, Cooter and Gell, the Supreme Court seemed reluctant to acknowledge that this circuit got it right in Zaldivar, but it essentially ended up saying that it did. In Cooter and Gell, the Supreme Court said an appellate court should apply an abusive discretion standard in reviewing all aspects of a district court's Rule 11 determination. And I think that's where... If I can interrupt for just a moment. Yes, Your Honor. Rule 11 has had a kind of a checkered history. At the beginning, there were several circuits and several judges on some of the other circuits that were extremely enthusiastic about sanctioning people under Rule 11. If you had the misfortune to practice in front of the Seventh Circuit, Rule 11 was a terrorizing rule. But partly the rulemakers backed off and partly the judges backed off, and Rule 11 sanctions actually, as I'm sure you know now, fairly rare. And I think we understand very well what the governing standard is today. So I'm not sure I need a lot of education on that. My problem is the Barton Rule. As I read the Barton Rule, you had to go to court to ask for permission, and you didn't. Or rather, your client. Right. And for me, that's the beginning and the end of it. Understood. And I think that brings up the issue of personal versus official capacity. Because the Barton Rule requires permission to sue in a trustee's official capacity, and Section 959 provides an ultra viris exception to that. The exception to the plan injunction here that I've quoted makes no such distinction. It talks about gross negligence, willful misconduct, fraud or breach of the fiduciary duty of loyalty. And Judge Winmel addressed that distinction that you rely on, personal compared to official capacity, and says there's nothing in the law that allows that differentiation under Barton. What's your response to that? My response is that really the issue between personal and official capacity is who is liable and who pays. Because under Barton, a bankruptcy judge is overseeing the bankruptcy and the trustee's actions, and the trust would be liable if you sue the trustee in his official capacity. And so the bankruptcy court ought to have authority over that to say whether you can or not. But does the Barton doctrine distinguish between the two? It talks about in official capacity. It talks about if you are going to sue the bankruptcy trustee in his official capacity, you have to have permission of the court. Now, do you have that language from Barton that says it that way? You've got Barton here in front of me. Yeah. I do somewhere, but I don't have it right in front of me, Your Honor. Okay. But my point is that we can sue a bankruptcy trustee in his personal capacity because then he's liable and he's the one that would be paying the damages. It shouldn't be the trust that pays. And that's why I think that's why there is an exception to the plan injunction. And it doesn't say in each case subject to a determination by the bankruptcy court. It says of such by final order of a court of competent jurisdiction, it could have said otherwise. Let me just turn to the policy reasons. If this court affirms the district court's sanction orders, it will send a message to every attorney in the Ninth Circuit that you better not sue a bankruptcy trustee or you'll get sanctioned, even if there's an express exception in the plan injunction. Without asking permission. It will send a message that if you argue Barton is overbroad or if you argue a section 959 exception in Barton or if you argue the plan exception applies, you'll get sanctioned. It may send a message that if you file a RICO action, you'll get sanctioned. It may send a message that a bankruptcy trustee or advisor are above the law, that you can never sue a bankruptcy trustee for anything ever. That would have the very chilling effect that Kuter and Gehl expressly cautioned against. So short of being disbarred, being sanctioned under Rule 11 is one of the worst things you can do to an attorney. As this court says in its extraordinary remedy, only to be exercised in extreme caution. And because the court failed to follow the correct standard in this case, it necessarily abused its discretion and we'd ask the court to reverse and vacate the sanctions orders. Okay. Well, let's hear from the other side, and you've saved some time. Thank you, Your Honor. Good morning. Jennifer Radel from Gibbons PC on behalf of Conrad Myers and William Rich. I'd like to start exactly where Appellant's counsel did because I think it's the perfect place to start, and that is what's the question? The question for this court is not whether a competent attorney could make a good faith argument. The question for this court is whether Chief Judge Windmill abused his discretion in finding in these circumstances, in this case, that no competent attorney performing a reasonable inquiry could determine that filing this complaint against the trustees alleging these allegations in Idaho without prior permission was viable. And he found that that answer to that question is no, and that was not an abuse of discretion. So how do you respond to the argument you just heard about exculpated parties? I think the answer to that is rather simple, and it is in our brief. The end of that provision, that provision talks about what the trustee can be liable for. A trustee can be liable for willful misconduct and fraud, but it can only be held liable in a court of competent jurisdiction, and Barton is all about what court has jurisdiction. This Court's cases, medical development and in Ray Crown Advantage, make clear that Barton is jurisdictional. If you lodge a complaint in any court other than the appointing court without prior permission, that court has no jurisdiction, and that's exactly what Mr. Adkin did here. So the scope of the attorney's liability in that exculpated parties provision, the exception, is still dependent upon compliance with Barton. So the argument your opposing counsel made that Barton only applies to official capacity complaints. That issue is not as settled under Barton. But what Judge Windmill found is you can't just call an allegation in someone's personal capacity to plead around Barton. He looked at the allegations. And if the Court looks at the allegations, comparing the original complaint and the proposed amended complaint, there is not a single substantive allegation that is changed. Judge Windmill found that these allegations, although they were labeled personal capacity when the complaint was filed in Idaho, were really alleging acts that were done not only in his capacity as a court-appointed trustee, but some of the allegations go to things that he was specifically ordered and granted the rights to do. So he said you can't just label it personal capacity, just like you can't just label something fraud and come with an exception. You have to make a good-faith allegation that it's within someone's personal capacity. And here he found that those allegations, he used the words such as nonsense and all fluff and no substance. He's entitled to do that. You know, as soon as somebody starts using words like that, I begin to get suspicious that the arguments aren't very sound. That is to say, and this is no criticism of Judge Windmill, who is a very capable judge. But just as a matter of reading legal argument, whenever I read a lawyer saying that the other side's arguments are fluff or all hat and no cattle, whatever sort of pejorative phrases, I begin to think that the lawyer doesn't trust the substance of his arguments. So it doesn't help me very much that Judge Windmill might have used those words. Okay. If you look at the original complaint, perhaps this will help. In the original complaint, there's a footnote that says, I'm suing these folks in their personal capacity, but I'm going to seek leave to sue them in their official capacity. Yeah, which he later did, and that was then denied. Which he later did. But Judge Windmill found that he wasn't changing anything. That's what was underlying those comments that Your Honor refers to. You know, I know I read Judge Windmill's order, and I understand exactly what he said and what he meant. But I'm having a little trouble rejecting out of hand the distinction between personal and official capacity if I take it into an entirely different context. Say, for example, suing the State Highway Patrol in an excessive force case. The suit is brought against the officer in his personal capacity rather than his official capacity, because if you bring it in his official capacity, you are suing the State of Oregon, and the Eleventh Amendment bars the suit. So you sue him in his personal capacity. But the allegations are identical. That is to say, here's what he did. There's law to support that those allegations are ultra-virus, and here there is no law to suggest that what Mr. Myers and Mr. Rich did, which in the course of just liquidating the assets and administering the estate, were outside the scope of their authority. But again, if you look back at the original complaint, Mr. Atkin wasn't making an argument that Barton shouldn't apply. The footnote in the original complaint admitted that Barton did apply. He wasn't arguing, you know, as the Eighth Circuit case, that our opposing counsel cited that Barton shouldn't apply anymore. He admitted that Barton is the rule of the day. The official versus personal capacity has to be the allegations have to meet the designation of personal capacity, and that's the thrust of Judge Windmill's ruling. He found that here they didn't. What Mr. Myers was accused of doing in his personal capacity was filing a tax return, which he was supposed to do under the plan, of trying to liquidate an equity interest in Wavetronics, which was precisely his duty under the plan, with trying to recover notes payable, again, an asset that he was charged with liquidating under the plan. So Judge Windmill found that none of those allegations came close to a good faith assertion under the law of a personal capacity. But, again, unless that decision is outside the scope of reasonable possibilities, this Court has to affirm the decision because of the standard of review, which is the abuse of discretion. I've got a second problem, and that's with the second order from Judge Peckman. Yes. Under 1927, as I read the order, and the critical words come at the end of Judge Peckman's order on the 1927 sanctions for basically appealing Judge Windmill's order, Judge Peckman doesn't recite the standard properly. What am I supposed to do with that? I think Judge Peckman does recite the standard. She recites it partially, but she doesn't cite it fully. She cites the statute, but she doesn't cite the case law to cite it under the statute. My recollection was that she said that bad faith is found with a reckless filing. We better read that. She said, a court may impose sanctions on attorneys who display recklessness. It says of bad faith. I believe that that's a typographical error. A court may impose sanctions on attorneys who display recklessness or bad faith,  Well, but then what she says here, the Court finds the motion for reconsideration was taken to needlessly prolong litigation on the sanctions issue without reasonable basis in law. She doesn't say that that's bad faith or reckless. She just says it was needlessly prolonged. She doesn't use the words bad faith and recklessness in that sentence, but this Court has affirmed sanctions orders were those and said that that's not a magic word. If you cite the correct standard and the rest of the opinion and the findings and the record as a whole supports the finding, then the Court can affirm. I would direct the Court's attention to In Re Piorio and Pacific Harbor. Pacific Harbor in particular, the Court looked and said, does the record support the conclusion, given the fact that the Court cited the correct standard? And here, certainly, that's the case. In the earlier part of the opinion, Judge Peckman noted this was a motion for reconsideration filed after this Court had dismissed a petition for interlocutory appeal and a petition for mandamus. This Court said there's no need for immediate review, and Mr. Atkins petitioned for reconsideration. Can you give me a little help in context? A lot of times you get these Rule 11 sanctions or 1927 sanctions in a case where there's quite a long history and everybody's aggravated because of what's happened. Is there any such history with respect to these litigants or with respect to Mr. Atkins? This was a very, I'll say, hotly litigated litigation under adversary proceeding for years. The complaint between Wavetronics and the trustee was filed, I believe, in 2010. So after two years of long litigation, this RICO complaint was filed against Mr. Myers and Mr. Rich. And it really did sort of heighten the — Does Mr. Atkins have any history of Rule 11 violations outside of this case? I mean, were there any threats of sanction in this litigation? I understand this was a complicated litigation, a big bankruptcy, a lot of fraud. Yes. And Mr. Atkins, he's not himself engaged in the fraud. He's just one of the lawyers. Mr. Atkins came in, I believe, to the litigation two years into it at the time that the RICO complaint was filed. So he wasn't involved in the litigation in the prior two years. Okay. Thank you. But I think Judge Windmill found that at the time, at least, there were no prior sanctions against Mr. Atkins. Okay. Now, you're over time, so if you'd just like to sum up. Just to sum up, I would like to reiterate that the standard here is abuse of discretion, not a de novo review, whether this Court finds that a good faith attorney could make the arguments. Thank you. Thank you. Now, you'd start to reserve two minutes. Thank you, Your Honor. In addressing your question about Barton, on page one of our opening brief, footnote one, we cited Barton. And then in footnote two, we quoted from the confirmation order which incorporated the Barton rule, which is absent the permission of the Court, no judicial, administrative, arbitral, or other proceeding shall be commenced in any form other than this Court against the trustee or litigation. Trustee in their official capacity. So that's where the distinction is, is in the confirmation order itself. Second, in terms of the language and fluff, as the Court has pointed out, in Zaldivar, the district court used very expressive language that attorneys sometimes use. No reasonable person could ever come up with this argument. And I've been in front of judges who say, well, I could. That's not a very good argument, counsel. And in Zaldivar, the Court reversed a sanctions order. 1927, Your Honor, there was no express finding of bad faith. I think that was what you were – the point I would try to make is that there was no express finding of bad faith. The argument on the other side is it's pretty clearly implied. I'm sorry, Your Honor. But the argument made is it's pretty clearly implied because the bad faith was used. And then in the next sentence, the finding doesn't repeat bad faith. Right. Yeah. And the Pura case is our case on that because it has to be an express finding of bad faith to find sanctions. And, again, because sanctions are such – the reason we're here is not about the money. It's about this attorney's reputation. So, again, the Court understands the standard. The correct standard is abuse of discretion under Cooter and Gehl, which includes abuse of – which includes if there's an error of law, we – our argument has been that there was an error of law here in applying the correct standard, and we'd ask the Court to reverse and vacate. Okay. Thank you. Thank both sides for your arguments. The case of Atkin v. Myers submitted for decision. The next case on the argument calendar, United States v. Malamon.
judges: Fernandez, W. Fletcher, Melloy